The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

David L. WHITAKER, Defendant–Appellant.

No. 98CA2273.

Colorado Court of Appeals, Div. II.

Sept. 14, 2000.

Certiorari Granted Oct. 1, 2001.

Ken Salazar, Attorney General, Kim L. Montagriff, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Dana Nichols, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge PLANK.

Defendant, David Whitaker, appeals the judgment of conviction entered upon a jury verdict finding him guilty of possession with intent to distribute more than one kilogram of a controlled substance (methamphetamine). We affirm.

Defendant was a passenger on a bus traveling from Los Angeles to Denver that stopped in Grand Junction, Colorado, for service and to change drivers. The passengers were required to leave the bus during the stop.

Subsequently, after the passengers had boarded the bus for departure from Grand Junction, three police officers entered the bus and spoke with them. Defendant's conduct aroused their suspicions, and, upon obtaining defendant's consent, they searched a travel bag and discovered almost four kilograms of methamphetamine. The conviction here at issue followed.

## I.

Defendant contends that the trial court erred when it denied his motion to suppress certain evidence as the fruits of an unconstitutional search. We disagree.

## A.

Defendant first contends that his initial encounter with the police officers was an investigatory stop unsupported by a reasonably articulable suspicion that a crime was being committed. We are not persuaded.

Police interactions with the public fall into three categories for search and seizure analysis: consensual interviews, investigatory stops, and arrests. During a consensual interview, no seizure occurs because the police seek voluntary cooperation. A consensual interview can escalate into an investigatory stop, and thus implicate the protections of the Fourth Amendment, if, upon objective review of the totality of the circumstances, a reasonable person would not feel that he or she was free to leave or to disregard the officer's request for information. *People v. Paynter,* 955 P.2d 68 (Colo.1998).

Citing *People v. Sporleder,* 666 P.2d 135 (Colo.1983), defendant argues that Colo. Const. art. II, § 7, provides more protection against the type of seizure at issue here than does the Fourth Amendment, and that such provision would here support his motion to suppress. We are not persuaded.

We agree that the reach of our constitution has occasionally been held to be broader than its federal counterpart. *See People v. Oates,* 698 P.2d 811 (Colo.1985) (holding the warrantless placement of a tracing device in a drum of chemicals to be illegal search); *People v. Sporleder, supra* (recognizing an objectively reasonable expectation of privacy in telephone numbers dialed that is not recognized by U.S. Supreme Court); *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980) (recognizing an objectively reasonable expectation of privacy in banking records); *see also People v. Hillman,* 834 P.2d 1271 (Colo.1992) (discussing issue of an objectively reasonable expectation of privacy in trash left in the street for collection).

However, our supreme court has relied on federal Fourth Amendment jurisprudence to resolve the type of seizure issues raised here by defendant, and has done so without construing Colo. Const. art. II, § 7, more broadly than the Fourth Amendment. Furthermore, defendant makes no specific argu-

ment to justify a deviation from such precedent of our supreme court. Consequently, we decline to expand upon the protections provided by the Fourth Amendment. *See People v. Grazier*, 992 P.2d 1149 (Colo.2000) (applying Fourth Amendment jurisprudence to conclude that search was not supported by probable cause); *People v. Paynter, supra* (analyzing and defining the hierarchy of consensual encounters, investigatory stops, and arrests).

■ The determination of whether a consensual interview has escalated into an investigatory stop is a mixed question of law and fact. Upon review, we are bound by the trial court's findings if they are supported by evidence in the record, but we review its ultimate legal conclusion *de novo*. *See People v. Romero*, 953 P.2d 550 (Colo.1998).

■ Here, on supporting evidence, the trial court found, *inter alia*, that defendant was questioned by two different police officers for a total of approximately three minutes before he consented to the search of the travel bag. Defendant conceded certain items in the bag were his, but he denied owning the bag or the remainder of its contents.

The court 'also found that the officers did not display any weapons, were in plain clothes, did not obstruct the exit door of the bus, and announced that they wanted to talk to every passenger "if that was okay with them" and that the passengers were "free to go about their business" as the officers did so.

From these findings the court held that "a reasonable person" would have concluded that he "did not have to comply" with the officer's request for information.

In challenging the court's conclusion, defendant argues that it failed to take into account the physical proximity and placement of the officers during the questioning that occurred, noting that one stood "directly behind" him and the other "directly in front," while a third officer was "stationed by the door." However, the trial court specifically described the placement and movement of the officers in its findings in terms that suggest neither intimidation nor detention of defendant, and we are not persuaded that the trial court failed to take such matters into consideration.

Accordingly, reviewing the circumstances *de novo* in light of the trial court's findings, we agree with the trial court that defendant was not detained until after the suspicious packages were found.

### B.

Defendant next contends that the allegedly prolonged police questioning, and the officers' repeated questions about defendant's stated lack of luggage, unconstitutionally escalated the encounter on the bus to an investigatory stop significantly before the discovery of the suspicious packages in the travel bag. Again, we are not persuaded.

■ Where police questioning is prolonged after a defendant has provided identification and answered questions in a manner that does not give rise to additional suspicions, a seizure may have occurred, and a previously consensual encounter may have escalated into an investigatory stop or an arrest. *People v. Johnson*, 865 P.2d 836 (Colo.1994).

■ Here, however, not only did the questioning of defendant last only three minutes before the discovery of the suspicious packages, approximately the same amount of time regarded as acceptable by the supreme court in *Johnson*, but, more importantly, the suspicions of the police officers were aroused by defendant's answers to their questions. Such suspicious answers included especially his statement that he had no luggage despite having been away from home for several days and spending several additional days on buses traveling to and from his destination. And, while defendant may have attempted to obscure the travel bag from the view of the police, it was nevertheless in plain view on a public conveyance, and its presence appeared to contradict his statement that he had no luggage on the bus. Such actions by the police therefore constitute neither prolonged nor unreasonable questioning, and we conclude that the encounter did not thereby escalate into an investigatory stop.

## C.

Defendant maintains that the trial court failed to rule on whether he consented to leave the bus with the police officers after the search of the travel bag revealed the suspicious packages and that at least a remand is required to resolve the point. We disagree.

The trial court ruled, and we have affirmed, that no seizure occurred until the consent search of the travel bag on the bus turned up packages consistent with the illegal transportation of a controlled substance. Once the police officers had found the suspicious packages, they had a reasonably articulable suspicion to support a detention of defendant for further inquiry.

Defendant concedes that such an investigatory stop was proper at that point, but he argues that requiring him to disembark from the bus escalated the stop into a warrantless arrest without probable cause. We are not persuaded.

When an investigatory stop involves more than a brief detention and questioning, it escalates into an arrest, which must be supported by probable cause. To determine whether an investigatory stop has escalated into an arrest, the trial court must consider the totality of the circumstances, including at least the following four factors: (1) the length of the detention; (2) whether the investigation was diligently pursued; (3) whether the suspect was required to move from one place to another; and (4) whether there were alternative and less intrusive methods available which the police unreasonably failed to pursue. *People v. Rodriguez*, 945 P.2d 1351 (Colo.1997) (investigatory stop escalated into illegal arrest where driver was detained for 90 minutes and required to travel 10 miles in a direction away from his stated destination).

Defendant here focuses on the third consideration and argues that he was unreasonably and unnecessarily required to move from inside the bus to a location outside the bus, where one of the suspicious packages was opened, revealing the methamphetamine. The trial court found, with support in the record, that only a short time had passed from the request to leave the bus until the package was opened, providing probable cause for defendant's arrest. The exact location of these events is not clear in the record, but some testimony of the officers suggests that the package was opened just outside the bus.

Under the totality of the circumstances as shown by the court's findings, we conclude there was nothing more than a brief detention during which defendant was asked to leave the bus, and we are not persuaded that the encounter escalated into an arrest prior to the opening of the suspicious package.

Accordingly, we perceive no error in the trial court's decision not to suppress the evidence found in the travel bag.

## II.

Defendant contends that the trial court erred when it determined that possession of more than one kilogram of a schedule II controlled substance is a class 3 felony. We disagree.

Section 18–18–405(1), C.R.S.2000, sets out, *inter alia*, the offense of knowingly possessing a controlled substance with intent to distribute.

Section 18–18–405(2), C.R.S.2000, establishes that a person who violates § 18–18–405(1):

(a) In the case of a controlled substance listed in schedule I or II of part 2 of this article, commits:

(I) A class 3 felony; except that a person commits a class 4 felony if such violation is based on the possession of a controlled substance listed in schedule II unless otherwise provided in paragraph (a) of subsection (3) of this section. . . .

Section 18–18–405(3)(a), in turn, provides that differing ranges of incarceration are required for persons convicted of possessing with intent to distribute specified amounts of controlled substances.

Methamphetamine is a schedule II controlled substance. Section 18–18–204(2)(c)(II), C.R.S.2000. Accordingly, de-

fendant argues that the language in § 18–18–405(2)(a)(I) directs that his offense, based upon possession of a schedule II controlled substance, is a class 4 felony. In the alternative, defendant argues that the statute is ambiguous, and that we must apply the rule of lenity and interpret the ambiguity in his favor. We perceive no ambiguity and conclude that defendant committed a class 3 felony.

Our purpose in construing a statute is to give effect to the General Assembly's intent. When the language of the statute is unambiguous, we presume it expresses the intent of the General Assembly, and we will apply it as written, without resort to other interpretive rules of construction. *People v. Shinaut,* 940 P.2d 380 (Colo.1997). In the absence of any statutory ambiguity, the rule of lenity has no application. *People v. Gonzales,* 973 P.2d 732 (Colo.App.1999).

The language of § 18–18–405, while somewhat contorted, is not ambiguous. Section 18–18–405(1) establishes certain substantive offenses including, as pertinent here, possession of a schedule II controlled substance with intent to distribute. Section 18–18–405(2)(a)(I), C.R.S.2000, sets forth the generally applicable sentencing provisions for the offenses defined in § 18–18–405(1), and in particular directs that offenses involving schedule I and schedule II controlled substances are generally class 3 felonies.

However, offenses involving schedule II controlled substances are class 4 felonies unless the quantity of schedule II controlled substance is 25 grams or more, thus triggering the enhanced sentencing provisions set forth in § 18–18–405(3)(a).

Here, the enhanced sentencing provision of § 18–18–405(3)(a)(III), C.R.S.2000, is applicable to defendant because the jury determined that he possessed with intent to distribute more than one kilogram—indeed, nearly four kilograms—of a schedule II controlled substance. Therefore, his offense falls into the general category of § 18–18–405(2)(a), making it a class 3 felony subject to the enhanced sentencing provisions of § 18–18–405(3)(a)(III), and we perceive no error in the trial court's sentencing him accordingly.

## III.

Defendant contends that structural error occurred when the trial court failed properly to instruct the jury on all the elements of the offense of possession with intent to distribute a schedule II controlled substance. We disagree.

Defendant argues that the trial court's instruction on the elements of possession with intent to distribute a controlled substance impermissibly allowed the jury to convict him even if it found that he did not knowingly possess more than one kilogram. Defendant's argument is premised upon the assumption that the quantity of the controlled substance is an element of the offense.

As pertinent to defendant's argument, structural error occurs only when the trial court misstates or omits an essential element of an offense. *Cooper v. People,* 973 P.2d 1234 (Colo.1999) (misstatement of essential element of crime of burglary was structural error). But *see People v. Geisendorfer,* 991 P.2d 308 (Colo.App.1999) (concluding that U.S. Supreme Court's decision in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) does not require this result).

However, the quantity of a controlled substance possessed is a sentence-enhancing circumstance, not a substantive element of the offense. *See Vega v. People,* 893 P.2d 107 (Colo.1995). Accordingly, defendant's assertion of structural error necessarily fails.

Since there is no structural error, and since defendant did not object to the proposed instruction, reversal will be required only if the alleged defect constitutes plain error. *See People v. Roy,* 948 P.2d 99 (Colo.App.1997).

Plain error occurs only when the appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Mandez,* 997 P.2d 1254 (Colo.App. 1999).

A sentence-enhancing circumstance, because it is not a substantive element of an offense, does not require any culpable mental state. *People v. Ramirez*, 997 P.2d 1200 (Colo.App.1999) (*cert. granted* April 24, 2000).

Here, defendant was charged with possession of a schedule II controlled substance with intent to distribute. Regardless of the amount, he was convicted of at least a class 4 felony for that possession. By also proving to the jury beyond a reasonable doubt that defendant possessed more than one kilogram of the controlled substance, the prosecution triggered enhanced sentencing pursuant to §§ 18–18–405(3)(a) and 18–18–405(2)(a), C.R.S.2000, as discussed above. Therefore, the prosecution was not required to prove that defendant knew he possessed more than one kilogram. *See People v. Ramirez, supra.*

Accordingly, the asserted instructional defect does not constitute a basis for reversal of the conviction.

### IV.

Defendant contends that the trial court erred when it treated the special offender provision in § 18–18–407(1), C.R.S.2000, as a sentence-enhancing provision and not as a substantive offense in its instructions to the jury. We are not persuaded.

### A.

Section 18–18–407(1) provides that if certain extraordinary aggravating circumstances are present, a defendant is to be designated a special offender and enhanced sentencing is required. One such circumstance, set out in § 18–18–407(1)(d), C.R.S.2000, occurs if:

> The defendant unlawfully introduced, distributed, or imported into the state of Colorado any schedule I or II controlled substance. . . .

The jury was asked to answer a special interrogatory to determine if the prosecution had proved beyond a reasonable doubt that defendant "did introduce, distribute, or import into the State of Colorado the controlled substance methamphetamine." The jury answered the interrogatory in the affirmative.

Defendant argues that this special offender provision constitutes a separate criminal offense and, therefore, requires that the jury be specifically instructed that the defendant must have knowingly "introduced, distributed, or imported" a schedule I or II controlled substance into Colorado.

However, another division of this court recently held to the contrary, concluding that § 18–18–407(1) is a sentence-enhancing provision and does not create a separate criminal offense or define an additional substantive element for the drug offenses to which it applies. *People v. Ramirez, supra.*

We agree with the reasoning of *People v. Ramirez* and similarly conclude that § 18–18–407(1) is a sentence-enhancing provision. Accordingly, it was not necessary for the trial court to instruct the jury as to a culpable mental state, and it was sufficient for the jury to be given the special interrogatory asking only if the prosecution had proved "beyond a reasonable doubt that the defendant did introduce, distribute, or import into the State of Colorado the controlled substance methamphetamine."

Defendant, however, also argues that *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) requires a different result. In that case, the Supreme Court overturned the defendant's carjacking conviction under 18 U.S.C. § 2119 (1998) in which an enhanced sentence had been imposed because the trial court found the victim had sustained serious bodily injury. Noting that the basic carjacking statute was incomplete without one of the three subsections defining the appropriate penalty, the Court concluded that the serious bodily injury factor was a substantive element of an offense other than the one charged in the indictment. Therefore, it held that the statute must be read as defining three separate offenses, rather than a single offense with two sentence-enhancing circumstances.

The *Jones* court relied in part on its observation that in federal criminal prosecutions, sentence-enhancing circumstances are determined by a preponderance of the evidence by the trial court, not by the jury, without notice to the defendant in the indictment. The holding in *Jones* is thus based in part on due process concerns not relevant under the pro-

cedure employed here, because the jury found that defendant had distributed, introduced, or imported a controlled substance into the state. *See Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (the state may not rely upon facts that are not proved to the jury beyond a reasonable doubt and that do not appear in the allegations of the indictment to increase an offender's sentence by denominating them as sentencing factors).

Again, we agree with the reasoning of the division that decided *Ramirez,* and we are not persuaded that *Jones* or *Apprendi* requires a different result here, for each is entirely consistent with our supreme court's analysis of sentence-enhancing circumstances in *Vega v. People, supra.*

Here, the sentence-enhancing factor was proved to the jury beyond a reasonable doubt. Furthermore, defendant's conviction would stand, albeit as a class 3 felony without sentence enhancement, regardless of whether he introduced, distributed, or imported a schedule II controlled substance into Colorado, and § 18–18–405 specifies a complete offense without reference to the special sentencing provisions in § 18–18–407(1).

Thus, there was no error in the trial court's instructions to the jury, nor in the form of the special interrogatory the jury was required to answer.

### B.

█ Defendant also argues that the trial court erred because it failed to define "introduced," "distributed," or "imported" to guide the jury's finding under the special offender statute. However, the supreme court has acknowledged, in rejecting a constitutional challenge for vagueness, that these precise words from the special offender statute, § 18–18–407(1), have meanings commonly understood by persons of reasonable intelligence. *People v. Garcia,* 752 P.2d 570 (Colo. 1988). Accordingly, the trial court did not need to provide definitional instructions for these terms. *See People v. Deadmond,* 683 P.2d 763 (Colo.1984).

### V.

Defendant contends that there was insufficient evidence to support the jury's verdict that he "introduced, distributed, or imported" a schedule II controlled substance into Colorado. We disagree.

█ In reviewing a claim of insufficiency of the evidence, we must consider the evidence presented, in the light most favorable to the prosecution, to ascertain whether a reasonable juror could conclude that the prosecution proved the elements of the charged offense beyond a reasonable doubt. We may not substitute our judgment for that of the jury and reweigh the evidence or the credibility of witnesses. However, more than a modicum of evidence is required to prove an element beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988). The jury may not speculate, guess, or indulge in conjecture to reach its guilty verdict. *People v. Gonzales,* 666 P.2d 123 (Colo.1983).

█ Here, defendant challenges only the sufficiency of the evidence that he brought contraband into the state, arguing that the jury was required to speculate or guess upon inconclusive evidence to make such a finding.

The evidence supporting the jury's finding includes: (1) defendant admitted, and his ticket and other evidence confirmed, that he began his bus trip in San Francisco and made stops in Los Angeles and Las Vegas before entering Colorado; (2) he denied owning the travel bag or any of its contents but admitted it had been on the bus prior to his entering Colorado; and (3) the layover in Grand Junction prior to the discovery of the contraband was relatively short.

Defendant argues that this evidence does nothing more than invite speculation that the methamphetamine was already in the bag and on the bus prior to the bus's entry into Colorado. However, in our view, the cited evidence is sufficient to support the jury's finding on this issue.

The judgment is affirmed.

Judge TAUBMAN and Judge NIETO concur.