The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Stanley T. COLEMAN, Defendant–
Appellant.

No. 00CA1602.

Colorado Court of Appeals,
Division II.

March 14, 2002.

Certiorari Denied Oct. 7, 2002. *

---

* Justice KOURLIS would grant as to the following issue:

Whether the court of appeals erred in concluding that a defendant found to have imported into Colorado and possessed with intent to distribute a thousand grams or more of cocaine is subject to a lower minimum sentence than a defendant merely found to have possessed with intent to distribute the same amount.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Stanley T. Coleman, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of possession with intent to distribute 1000 grams or more of cocaine and of being a special offender. He also appeals the sixteen-year sentence imposed. We affirm the judgment, vacate the sentence, and remand for resentencing.

Defendant was a passenger on a commercial bus traveling from Los Angeles to Chicago. When the bus made its first stop in Colorado at Grand Junction, for routine servicing, the passengers were required to leave the bus.

After the passengers had reboarded the bus for departure, three plainclothes police officers entered the bus and spoke to them. When defendant's conduct caused them to be suspicious, the officers asked for permission to search him and received his consent. Upon searching defendant, they discovered 1986.2 grams of cocaine strapped to his body. He was then arrested.

Defendant was charged with one count of possession with intent to distribute cocaine amounting to at least 1000 grams under § 18–18–405(2)(a)(I), C.R.S.2001, and one count of special offender (importation) under § 18–18–407(1)(d), C.R.S.2001.

Defendant filed a motion to suppress evidence, asserting that he had been subjected to an illegal seizure. After an evidentiary hearing, the trial court denied the motion.

A jury convicted defendant of both counts. The trial court sentenced defendant to sixteen years, concluding that it had no discretion to impose a lesser sentence.

I.

Defendant first contends the trial court should have granted his motion to suppress evidence because the cocaine was obtained through a search conducted as a result of an illegal investigatory stop or seizure of the bus. We agree with the trial court that no seizure of the bus occurred and that defendant voluntarily consented to the search of his person.

In Colorado, three types of police-citizen encounters have been recognized when dealing with the Fourth Amendment's prohibition against unreasonable searches and seizures: consensual interviews, investigatory stops, and arrests. Arrests and investigatory stops are seizures. Hence, an arrest must be justified by probable cause, and an investigatory stop must be justified by a reasonable, articulable suspicion of criminal activity. *People v. Paynter*, 955 P.2d 68 (Colo.1998).

In contrast, no seizure occurs during a consensual interview where a police officer merely seeks voluntary cooperation of a citizen by asking noncoercive questions. *People v. Johnson*, 865 P.2d 836 (Colo.1994). A police-citizen encounter does not constitute a seizure merely because the citizen may feel social pressure to cooperate. *People v. Mel-*

*ton,* 910 P.2d 672 (Colo.1996). A consensual interview can escalate into an investigatory stop and thus implicate Fourth Amendment protections if, upon objective review of the totality of the circumstances, a reasonable person would feel that he or she was not free to leave or disregard an officer's request for information. *People v. Paynter, supra.* An officer need not, however, inform the citizen that he or she is free to leave. *People v. Melton, supra.*

In ruling on a motion to suppress, the trial court must determine the credibility of the witnesses and the weight to be accorded the evidence. *People v. Holmberg,* 992 P.2d 705 (Colo.App.1999). A trial court's findings of fact are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence. However, its ultimate legal conclusions are subject to de novo review. *People v. Romero,* 953 P.2d 550 (Colo.1998); *People v. Wright,* 804 P.2d 866 (Colo.1991).

Here, the trial court specifically found that the detective's testimony at the suppression hearing was more credible than defendant's testimony. We see no basis to disturb this finding. *See People v. Holmberg, supra.* Further, after reviewing the totality of the circumstances, the trial court concluded that the encounter between defendant and the police was consensual. We agree.

Initially, we reject defendant's contention that the general procedure used here was an improper seizure of the bus. The officers had the bus company's consent, the procedure was used during a normal service stop, and the bus was not delayed. *See United States v. Madison,* 936 F.2d 90 (2d Cir.1991); *United States v. Flowers,* 912 F.2d 707 (4th Cir.1990).

The encounter did not become a seizure simply because it occurred within the cramped confines of a bus. *See Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (officers boarding a bus and questioning passengers without a basis for believing a crime had occurred was not a per se violation of the Fourth Amendment; issue requires individual assessment of circumstances and determination whether reasonable person would feel free to end encounter or decline to answer questions posed). That police officers are involved is not a sufficient show of force to render the encounter nonconsensual. *See Florida v. Bostick, supra.*

Here, the trial court considered that the officers left the aisles clear to allow passengers to leave; they used conversational tones and wore plainclothes; they did not use force, coercion, or nonconsensual touching; and their weapons were not shown. The court also looked at the circumstances surrounding their direct encounter with defendant, and the factors that caused them to focus attention on defendant were reasonable. A division of this court has found not to be a seizure police conduct very similar to that challenged by defendant. *People v. Whitaker,* 32 P.3d 511 (Colo.App.2000)(*cert. granted* Oct. 1, 2001).

We also reject defendant's argument that the encounter was nonconsensual because the officers failed to tell the passengers that they could refuse to interact with them. The Fourth Amendment does not per se require this specific advisement. *See United States v. Little,* 18 F.3d 1499 (10th Cir.1994). Whether this notification occurred is only one factor to be considered in the totality of the circumstances. *See United States v. Broomfield,* 201 F.3d 1270 (10th Cir.2000).

The trial court found that the passengers were told that the officers would talk to them only "if that's all right with you" and that the passengers "should all feel free to go about your business as usual." These statements are consistent with a consensual interview. *See People v. Whitaker, supra.*

Accordingly, reviewing the ultimate legal conclusions de novo in light of the trial court's factual findings, we conclude that the encounter between defendant and the officers was consensual. *See People v. Whitaker, supra.*

In so concluding, we find defendant's reliance on *United States v. Washington,* 151 F.3d 1354 (11th Cir.1998), and *United States v. Guapi,* 144 F.3d 1393 (11th Cir.1998), misplaced. These cases are distinguishable from

the facts here. *See United States v. Broomfield, supra.* Furthermore, we are unpersuaded by the various state cases cited by defendant, as they are factually and legally distinguishable.

Finally, we reject defendant's argument that we should apply state constitutional standards, which are occasionally broader than their federal counterparts, to determine whether a consensual encounter occurred here. Defendant did not rely on state constitutional law in his motion to suppress, and the trial court did not rely on it in its ruling. Thus, we presume the trial court relied on federal law in making its ruling and therefore decline to address the applicability of state constitutional law here. *See People v. Gee,* 33 P.3d 1252 (Colo.App.2001). Moreover, in resolving the types of seizure issues that defendant raises, the supreme court has not construed the state constitutional standards more broadly than the Fourth Amendment. *See People v. Whitaker, supra.*

We affirm the trial court's ruling denying defendant's motion to suppress.

## II.

Defendant next contends that the trial court erred in concluding that it had no discretion to impose a minimum sentence of less than sixteen years. We agree.

Absent a showing that the trial court's wide latitude in sentencing was marred by a clear abuse of discretion, a sentencing decision will not be reversed on appeal. *See People v. Koehler,* 30 P.3d 694 (Colo.App.2000). Here, however, we resolve an issue of statutory interpretation, which is a question of law.

Defendant was convicted of both possession with intent to distribute a thousand grams or more of cocaine, a class three felony, § 18–18–405(2)(a)(I), and a special offender count for importing cocaine into Colorado, § 18–18–407(1)(d). The People argue that, because defendant possessed more than a kilogram of cocaine, under § 18–18–405(3)(a)(III), C.R.S.2001, the minimum sentence he could receive was sixteen years, which is the maximum presumptive sentence for a class three felony. Defendant argues

that, under the special offender statute, § 18–18–407(1), C.R.S.2001, he could be sentenced to eight years, which is the minimum presumptive sentence for a class two felony.

The trial court concluded that it was obligated to impose the minimum sentence under § 18–18–405(3)(a)(III), a sixteen-year term. The trial court said that it would have imposed a lesser sentence if it had had discretion to do so.

In deciding whether the trial court erred, we must examine the sentencing ranges of §§ 18–18–405(3)(a)(III) and 18–18–407(1)(d).

Section 18–18–405(3)(a)(III) provides, in pertinent part:

> *Except as otherwise provided in section 18–18–407 relating to special offenders,* any person convicted pursuant to [§ 18–18–405(2)(a)] for knowingly . . . possessing with intent to . . . distribute . . . an amount that is . . .
>
> (III) One thousand grams or one kilogram or more of any . . . schedule I or schedule II controlled substance . . . *shall be sentenced* to the department of corrections for a term greater than the maximum presumptive range but not more than twice the maximum presumptive range provided for such offense in section 18–1–105(1)(a).

(Emphasis supplied.) Possession with intent to distribute is a class three felony that carries a presumptive range of four to twelve years. Section 18–1–105(1)(a)(V)(A), C.R.S. 2001. However, because possession with intent to distribute is an extraordinary risk of harm crime, the presumptive range becomes four to sixteen years. Section 18–1–105(9.7)(a), (b)(XI), C.R.S.2001.

Section 18–18–407(1)(d) provides, in pertinent part:

> Upon a felony conviction under this part 4, the presence of any one or more of the following extraordinary aggravating circumstances designating the defendant a special offender *shall require the court to sentence* the defendant to a term of at least the minimum term of years within the presumptive range for a class 2 felony but not more than twice the maximum

term of years within the presumptive range for a class 2 felony . . .

(d) The defendant unlawfully introduced, distributed, or imported into the state of Colorado any schedule I or II controlled substance. . . .

(Emphasis supplied.)

Relying on the "[e]xcept as otherwise provided in section 18–18–407" clause of § 18–18–405(3), defendant contends that he should have been sentenced under § 18–18–407(1), which gives the sentencing court discretion to impose "a term of at least the minimum term of years within the presumptive range for a class 2 felony." That range is eight to twenty-four years. Section 18–1–105(1)(a)(V)(A).

The People respond that this result would be absurd because a special offender who imported into Colorado—one of the enumerated "extraordinary aggravating circumstances"—with intent to distribute over a kilogram of cocaine could receive a minimum sentence of eight years, while a defendant who possessed with intent to distribute, but did not import into Colorado, more than a kilogram of cocaine would receive a minimum sentence of at least sixteen years. The People urge us to consider that both §§ 18–18–405(3)(a)(III) and 18–18–407 are sentence enhancing provisions, citing *People v. Whitaker, supra; People v. Ramirez,* 997 P.2d 1200 (Colo.App.1999), *aff'd,* 43 P.3d 611 (Colo. 2001).

■■■■ Our fundamental responsibility when interpreting a statute is to give effect to the General Assembly's purpose. In doing so, however, we begin with the language of the statute. If the statutory language unambiguously sets forth the legislative purpose, we end our inquiry. *Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187 (Colo.1996). Conversely, if the statutory language does not clearly establish the General Assembly's purpose, or if the statute appears to conflict with other provisions, then we may determine the meaning of the statute from other factors, such as legislative history, prior law, the consequences of a given construction, and the end to be achieved by the statute. Section 2–4–203, C.R.S.2001; *Martin v. People,* 27 P.3d

846, 851 (Colo.2001). In no event, however, should a statute be interpreted to reach an absurd result. *Reg'l Transp. Dist. v. Lopez, supra.*

■■■■ We assume the General Assembly intended that the entire statute be effective. Section 2–4–201(1)(b), C.R.S.2001. We "must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts." *Charnes v. Boom,* 766 P.2d 665, 667 (Colo. 1988). We must construe each provision in a comprehensive legislative scheme to further the overall legislative intent. *Martin v. People, supra.*

We begin with the plain language of § 18–18–405(3)(a), "Except as otherwise provided in section 18–18–407. . . ." This phrase is both mandatory and unambiguous. A division of this court has held that the sentence enhancing provisions of § 18–18–405(3) would not apply if an accused was found to be a special offender under a former version of § 18–18–407(1). *See People v. Martinez,* 36 P.3d 201 (Colo.App.2001).

The version of § 18–18–407(1) that was before the court in *People v. Martinez, supra,* required the trial court to sentence a defendant to a term greater than the presumptive range for a class two felony, but not more than twice the maximum term for a class two felony authorized in the presumptive range. Colo. Sess. Laws 1992, ch. 71 at 361. Because the presumptive sentencing range for a class two felony was eight to twenty-four years, the sentencing range for a special offender was twenty-four years and one day to forty-eight years. *See People v. Pineda–Eriza,* 49 P.3d 329 (Colo.App.2001).

Under the statutory scheme as it existed then, the sentencing range under the special offender provision was always higher than that under § 18–18–405(3)(a). Thus, the construction adopted in *People v. Martinez, supra,* harmonized the enhancing provisions and assured that the defendant would receive the longer sentence, but not a sentence enhanced twice on the same count. *People v. Pineda–Eriza, supra.*

 

Section 18–18–407(1) was amended to its current form in 1997. The amendment reduced the sentencing range for special offenders to eight to forty-eight years. Under the current sentencing scheme, however, the minimum sentence under § 18–18–405(3)(a) will sometimes be higher than the minimum sentence under § 18–18–407(1), the anomaly noted by the People here.

Nevertheless, the plain language of § 18–18–407(1) shows that the General Assembly gave sentencing courts discretion to impose a lower minimum sentence under § 18–18–407(1) than would in some circumstances be the minimum sentence under § 18–18–405(3)(a). This result is based on simple arithmetic, not obscure language that might permit debate over the legislative purpose. Hence, we cannot depart from the plain language and look elsewhere for legislative purpose. *See Reg'l Transp. Dist. v. Lopez, supra; People v. Valdez,* 56 P.3d 1148 (Colo. App. 2002).

Moreover, had the legislature intended that the minimum sentence under § 18–18–407(1) could never be less than the minimum sentence under another statute, it could have done so by amending § 18–18–407(5), C.R.S. 2001. That section provides, "Nothing in this section shall preclude the court from imposing a greater sentence set forth in any other statute." Despite the substantial reduction in the sentencing range for § 18–18–407(1) occasioned by the 1997 amendments, the language of § 18–18–407(5) has remained discretionary.

Nor do we deem it an "absurd result" that the minimum sentence under § 18–18–405(3) can exceed the minimum for special offenders under § 18–18–407(1). We further note that most mandatory minimum sentences for felony convictions under part four of § 18–18, to which § 18–18–407(1) applies, will be lower than the minimum sentence under § 18–18–407(1).

Here, the trial court mistakenly believed it was required to impose the minimum sentence of sixteen years required under § 18–18–405(3). Thus, because the trial court did not consider the sentencing range allowed under § 18–18–407(1), we vacate the sen-tence and remand to the trial court for further proceedings to resentence defendant in accord with the views expressed herein.

The judgment is affirmed, the sentence is vacated, and the case remanded for further sentencing proceedings.

Judge PLANK and Judge JONES concur.